UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VELOXIS PHARMACEUTICALS, INC.,<br><br>Defendant | Criminal No. 26cr10221 |

## DEFERRED PROSECUTION AGREEMENT

The United States Attorney's Office, by its attorney, Leah B. Foley, United States Attorney for the District of Massachusetts (the "Office"), and the Defendant, Veloxis Pharmaceuticals, Inc. (the "Company"), pursuant to authority granted by the Company's board of directors, hereby enter into the following Deferred Prosecution Agreement (the "Agreement"):

**THE CRIMINAL INFORMATION AND ACCEPTANCE OF RESPONSIBILITY**

1.      The Company acknowledges and agrees that the Office will file the attached criminal information (the "Information") charging the Company with conspiracy to commit violations of the Federal Anti-Kickback Statute, contrary to Title 42, United States Code, Section 1320a-7b (the "Anti-Kickback Statute"), in violation of Title 18, United States Code, Section 371, during the years 2016 through 2023.

2.      In so doing, the Company: (a) knowingly waives any right it may have to indictment on these charges, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b) for the Term of this Agreement; (b) knowingly waives any legal or procedural defects in the Information; (c) knowingly waives any objection with respect to venue to any charges by the United States arising out of the conduct described in the Statement of Facts

attached hereto as Attachment A ("Statement of Facts") and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the District of Massachusetts; and (d) agrees that the charges in the Information and any charges arising from the conduct described in the Statement of Facts are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement. The Office agrees to defer prosecution of the Company pursuant to the terms and conditions described below.

3.      The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the Information, and as set forth in the Statement of Facts, and that the allegations described in the Information and the facts described in the Statement of Facts are true and accurate. The Company agrees that, effective as of the date the Company signs this Agreement, in any prosecution that is deferred by this Agreement, the Company will not dispute the Statement of Facts set forth in this Agreement, and, in any such prosecution, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the government on cross-examination; and (c) evidence at any sentencing hearing or other hearing. In addition, in connection therewith, the Company agrees not to assert any claim under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, the United States Sentencing Guidelines, or any other federal rule that the Statement of Facts should be suppressed or is otherwise inadmissible as evidence in any form.

## PARALLEL CIVIL SETTLEMENT

4.      Simultaneous with the execution of this Agreement, the Company and the United States are entering into a Civil Settlement Agreement to settle certain civil claims in connection

with the same conduct that is the subject of the Information and related conduct (the "Civil Settlement Agreement"). The Company shall make payment to the United States and the states as set forth in the Civil Settlement Agreement, for a total payment amount of $36,000,000 plus interest (the "Civil Settlement Agreement Payment").

## TERM OF THE AGREEMENT

5.      This Agreement is effective for a period beginning on the date on which the Information is filed and ending 36 months from that date (the "Term"). The Company expressly waives all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution for the Term of this Agreement. Moreover, the Company agrees: (a) to join the government in seeking to exclude, pursuant to Title 18, United States Code, Section 3161(h)(2), the Term of this Agreement from the time within which trial of the offense charged in the Information must commence, for the purpose of allowing the Company to demonstrate its good conduct; and (b) to waive any rights to a speedy trial under Federal Rule of Criminal Procedure 48(b) for the Term of this Agreement. If the Court refuses to grant exclusion of time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(2), all the provisions of this Agreement shall be deemed null and void, and the Term shall be deemed to have not begun, except that the statute of limitations for any prosecution relating to the conduct described in the Statement of Facts shall be tolled from the date on which this Agreement is signed until the date the Court refuses to grant the exclusion of time plus six months, and except for the provisions contained within Paragraph 3 of this Agreement.

6.      The Company agrees that, in the event the Office determines in its sole discretion that the Company has knowingly violated any provision of this Agreement, or has failed to completely perform or fulfill each of the Company's obligations under this Agreement, an

extension of the Term of the Agreement may be imposed by the Office, in its sole discretion, for up to an additional 12-month period, without prejudice to the right of the Office to proceed as provided in Paragraphs 20 through 23 below. Any extension of the Agreement extends all terms of the Agreement. Conversely, the Office may, in its sole discretion, terminate the Agreement early.

## RELEVANT CONSIDERATIONS

7.      The Office enters into this Agreement based on the individual facts and circumstances presented by this case, including:

a.  The nature and seriousness of the offense conduct, as described in the Statement of Facts;

b.  The Company did not receive voluntary disclosure credit pursuant to the Department of Justice's Corporate Enforcement Policy ("DOJ CEP"), or pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 8C2.5(g)(1), because it did not voluntarily and timely disclose the conduct described in the Statement of Facts;

c.  The Company received credit for its cooperation with the Office's investigation pursuant to U.S.S.G. § 8C2.5(g)(2) because it cooperated with the Office's investigation and demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct; the Company also received credit for its cooperation and remediation pursuant to the DOJ CEP. Such cooperation included, among other things: (i) facilitating interviews with current and former Company employees; (ii) providing relevant facts and material not known to the government, obtained through the Company's internal investigation; (iii) making detailed presentations to the Office; (iv) proactively identifying key documents, including

inculpatory evidence, in the voluminous materials collected and produced by the Company; (v) identifying individuals involved in the criminal conduct; (vi) engaging outside consultants to conduct financial analyses; and (vii) facilitating collection of evidence from third parties;

d. The Company provided to the Office all relevant facts known to it, including information about the individuals involved in the conduct described in the attached Statement of Facts and conduct disclosed to the Office prior to the Agreement;

e. The Company also received credit pursuant to the DOJ CEP because it engaged in timely and appropriate remedial measures, including: (i) terminating employees who remained at the Company who were responsible for the offense conduct; (ii) updating and revising policies and procedures related to the Anti-Kickback Statute, including policies relating to expenses and expense reporting, interactions with health care providers, sales and marketing, Sunshine Act reporting, speaker programs, meals and entertainment, and the requirements of the Food, Drug, and Cosmetic Act; (iii) conducting employee training and implementation of updated policies; (iv) establishing a compliance committee with direct and regular reporting to the Board of Directors and hiring a new chief ethics and compliance officer and additional compliance personnel; (v) enhancing and publicizing disclosure and internal reporting programs; (vi) adopting and publicizing an enhanced disciplinary policy; (vii) implementing an enhanced internal audit program; (viii) developing and implementing an enhanced internal investigations process; and (ix) terminating agreements and relationships with third parties involved in the offense conduct;

f. The Company has no prior criminal history; and

g. The Company has agreed to continue to cooperate with the Office in any ongoing investigation or prosecution as described in Paragraph 9 below.

8. Accordingly, after consideration of (a) through (g) above, the Office believes that the appropriate resolution in this case is a deferred prosecution agreement with the Company; a criminal monetary penalty of $10,044,364, which reflects a reduction of 25 percent off the low-end of the otherwise-applicable Sentencing Guidelines fine range; and restitution, which will be satisfied by payment of the Civil Settlement Agreement Payment.

**ONGOING COOPERATION AND DISCLOSURE REQUIREMENT**

9. The Company shall cooperate fully with the Office in any and all matters relating to the conduct described in this Agreement and the Statement of Facts and any other conduct under investigation by the Office until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term. At the request of the Office, the Company shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies in any investigation of the Company, its affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and the Statement of Facts. The Company's cooperation pursuant to this Paragraph is subject to applicable law and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine. The Company agrees that its cooperation pursuant to this Paragraph shall include, but not be limited to, the following:

a. The Company represents that it has timely and truthfully disclosed all factual information with respect to its activities, those of its subsidiaries, and those of its present and former directors, officers, employees, agents, and consultants relating

to the conduct described in this Agreement and the Statement of Facts as well as any other conduct under investigation by the Office about which the Company has any knowledge. The Company further agrees that it shall promptly and truthfully disclose all factual information with respect to its activities, those of its subsidiaries, and those of its present and former directors, officers, employees, agents, and consultants about which the Company shall gain any knowledge or about which the Office may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Company to provide to the Office, upon request, any document, record, or other tangible evidence about which the Office may inquire of the Company, including evidence that is responsive to any requests made prior to the execution of this Agreement.

b. Upon request of the Office, the Company shall designate knowledgeable employees, agents, or attorneys to provide to the Office the information and materials described in Paragraph 9(a) above on behalf of the Company. It is further understood that the Company must at all times provide complete, truthful, and accurate information to the Office.

c. The Company shall use its best efforts to make available for interviews or testimony, as requested by the Office, present or former officers, directors, employees, agents, and consultants of the Company. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of

witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

d.  With respect to any information, testimony, documents, records, or other tangible evidence provided to the Office pursuant to this Agreement, the Company consents to any and all disclosures, subject to applicable laws and regulations, to other governmental authorities, including United States authorities and those of a foreign government, of such materials as the Office, in its sole discretion, shall deem appropriate.

10.    In addition to the obligations in Paragraph 9, during the Term, should the Company learn of any evidence or allegation of a violation of the Anti-Kickback Statute or violation of any U.S. anti-fraud laws by the Company, the Company shall promptly report such evidence or allegation to the Office.

**PAYMENT OF MONETARY PENALTY**

11.    The Office and the Company agree that application of the Sentencing Guidelines to determine the applicable fine range yields the following analysis:

a.  The value of the improper benefit conferred on the Company in return for the unlawful bribe payments described in the Statement of Facts is: $13,392,485.

b.  Based upon U.S.S.G. § 2B4.1, the total offense level is 28, calculated as follows:

| Offense Level | | |
|---|---|---|
| **Guideline Subsection** | **Description** | **Score** |
| § 2B4.1 | Base offense level for commercial bribery | 8 |
| § 2B4.1 / § 2B1.1 | Value of the net benefit conferred as a result of the bribe is greater than $9,500,000 but not greater than $25,000,000 | +20 |
| **TOTAL OFFENSE LEVEL** | | =28 |

8

c. Pursuant to U.S.S.G. § 8C2.4 and U.S.S.G. § 2B4.1's special instruction for organizational fines, the base fine is $13,392,485.

d. Based upon U.S.S.G. § 8C2.5, the culpability score is 5, calculated as follows:

| Culpability Score | | |
|---|---|---|
| **Guideline Subsection** | **Description** | **Score** |
| § 8C2.5(a) | Start with 5 points | 5 |
| § 8C2.5(b)(4) | Organization had 50 or more employees and an individual within substantial authority personnel participated in, condoned, or was willfully ignorant of the offense | +2 |
| § 8C2.5(g)(2) | Organization fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct | –2 |
| **TOTAL** | | 5 |

e. Under U.S.S.G. § 8C2.6, a culpability score of five results in a fine multiplier range of one to two. Therefore, the guideline fine range is $13,392,485 to $26,784,970.

12.    The Office and the Company agree, based on the application of the Sentencing Guidelines, that the appropriate criminal penalty is $10,044,364. This reflects a 25 percent reduction from the low end of the Sentencing Guidelines fine range set forth in Paragraph 11(e).

13.    The Company agrees to pay a monetary penalty in the amount of $10,044,364 to the Crime Victims Fund pursuant to 34 U.S.C. § 20101(b)(6)(A) no later than ten business days after the Agreement is fully executed. The Company and the Office agree that this penalty is appropriate given the facts and circumstances of this case, including the relevant considerations described in Paragraph 7 of this Agreement. The $10,044,364 penalty is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Office that $10,044,364 is the maximum penalty that may be imposed in any future prosecution, and the Office is not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the Office agrees that under those circumstances, it will recommend to the Court that any amount paid under this Agreement should be offset against any fine the Court imposes as part of a

future judgment. The Company acknowledges that no tax deduction may be sought in connection with the payment of any part of this $10,044,364 penalty. The Company shall not seek or accept directly or indirectly reimbursement or indemnification from any source with regard to the penalty or disgorgement amounts that the Company pays pursuant to this Agreement, or any other agreement entered into with an enforcement authority or regulator concerning the facts set forth in the Statement of Facts.

## CONDITIONAL RELEASE FROM LIABILITY

14.    Subject to Paragraphs 20 through 23, the Office agrees, except as provided in this Agreement, that it will not bring any criminal or civil case against the Company or any of its subsidiaries relating to any of the conduct described in the Statement of Facts or the criminal Information filed pursuant to this Agreement. The Office, however, may use any information related to the conduct described in the Statement of Facts against the Company or any of its subsidiaries: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.

15.    This Agreement does not provide any protection against prosecution for any future conduct by the Company or any of its subsidiaries or affiliates.

16.    In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Company or any of its subsidiaries or affiliates.

**CORPORATE COMPLIANCE PROGRAM**

17.    The Company represents that it has implemented and will continue to implement a compliance and ethics program designed to prevent and detect violations of the Anti-Kickback Statute throughout the Company's operations, including those of its subsidiaries, agents, and joint ventures, including, but not limited to, the minimum elements set forth in Attachment C to this Agreement. On the date the Term expires, the Company, by its Chief Executive Officer and Chief Ethics and Compliance Officer, will certify to the Office, in the form of executing the document attached as Attachment E to this Agreement, that the Company has met its compliance obligations pursuant to this Agreement. This certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

**DEFERRED PROSECUTION**

18.    In consideration of the undertakings agreed to by the Company herein, the Office agrees that any prosecution of the Company for the conduct set forth in the Statement of Facts be and hereby is deferred for the Term. To the extent there is conduct disclosed by the Company that is not set forth in the Statement of Facts, such conduct will not be exempt from further prosecution and is not within the scope of or relevant to this Agreement.

19.    The Office further agrees that if the Company fully complies with all of its obligations under this Agreement, the Office will not continue the criminal prosecution against the Company described in Paragraph 1 and, at the conclusion of the Term, this Agreement shall expire. Within three months after the Agreement's expiration, the Office shall seek dismissal with prejudice of the Information filed against the Company described in Paragraph 1, and the Office

agrees not to file charges in the future against the Company based on the conduct described in this Agreement and the Statement of Facts. If, however, the Office determines during this three-month period that the Company breached the Agreement during the Term, as described in Paragraphs 20 through 23, the Office's ability to extend the Term, as described in Paragraph 6, or to pursue other remedies, including those described in Paragraphs 20 through 23 remains in full effect.

**BREACH OF THE AGREEMENT**

20.     If, during the Term, the Company: (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information; (c) fails to cooperate as set forth in Paragraphs 9 and 10 of this Agreement; (d) fails to implement a compliance program as set forth in Paragraph 17 of this Agreement and Attachment C hereto; or (e) otherwise fails to completely perform or fulfill each of the Company's obligations under the Agreement, regardless of whether the Office becomes aware of such a breach after the Term is complete, the Company shall thereafter be subject to prosecution for any federal criminal violation of which the Office has knowledge, including, but not limited to, the charges in the Information described in Paragraph 1, which may be pursued by the Office in the U.S. District Court for the District of Massachusetts or any other appropriate venue. Determination of whether the Company has breached the Agreement and whether to pursue prosecution of the Company shall be in the Office's sole discretion. Any such prosecution may be premised on information provided by the Company. Any such prosecution relating to the conduct described in the Statement of Facts or relating to conduct known to the Office prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus

one year. Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year. In addition, the Company agrees that the statute of limitations as to any violation of federal law that occurs during the Term will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Office is made aware of the violation or the duration of the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

21.    In the event the Office determines that the Company has breached this Agreement, the Office agrees to provide the Company with written notice of such breach prior to instituting any prosecution resulting from such breach. Within 30 days of receipt of such notice or longer at the discretion of the Office, the Company shall have the opportunity to respond to the Office in writing to explain the nature and circumstances of such breach, as well as the actions the Company has taken to address and remediate the situation, which explanation the Office shall consider in determining whether to pursue prosecution of the Company. The parties expressly understand and agree that if the Company fails to make the above-noted presentation within such period, it shall be presumed that the Company is in willful and material breach of this Agreement. The parties further understand and agree that the Office's exercise of discretion under this Paragraph is not subject to review in any court or tribunal outside the Department of Justice and the Office.

22.    In the event the Office determines that the Company has breached this Agreement: (a) all statements made by or on behalf of the Company to the Office or to the Court, including the Statement of Facts, and any testimony given by the Company before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all

13

criminal proceedings brought by the Office against the Company or its subsidiaries; and (b) the Company and its subsidiaries shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer, or employee, or any person acting on behalf of, or at the direction of, the Company or its subsidiaries, will be imputed to the Company or its subsidiaries for the purpose of determining whether the Company or its subsidiaries have violated any provision of this Agreement shall be in the sole discretion of the Office.

23.    The Company acknowledges that the Office has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement, and this matter proceeds to judgment. The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

24.    On the date that the period of deferred prosecution specified in this Agreement expires, the Company, by the Chief Executive Officer of the Company and the Chief Ethics and Compliance Officer of the Company, will certify to the Office in the form of executing the document attached as Attachment D to this Agreement that the Company has met its disclosure obligations pursuant to Paragraph 9 of this Agreement. Each certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and will be deemed to have been made in the judicial district in which this Agreement is filed.

**SALE, MERGER, OR OTHER CHANGE IN CORPORATE FORM OF COMPANY**

25.     Except as may otherwise be agreed by the parties in connection with a particular transaction, the Company agrees that in the event that, during the Term, it undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to the Company's consolidated operations as they exist as of the date of the signing of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. The purchaser or successor in interest must also agree in writing that the Office's ability to determine a breach under this Agreement is applicable in full force to that entity. The Company agrees that the failure to include these provisions in the transaction will make any such transaction null and void. The Company shall provide notice to the Office at least 30 days prior to undertaking any such sale, merger, transfer, or other change in corporate form. The Office shall notify the Company prior to such transaction (or series of transactions) if the Office determines that the transaction(s) will have the effect of circumventing or frustrating the enforcement purposes of this Agreement. If at any time during the Term the Company engages in a transaction (or series of transactions) that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the Office may deem it a breach of this Agreement pursuant to Paragraphs 20 through 23 of this Agreement. Nothing herein shall restrict the Company from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Office.

## PUBLIC STATEMENTS BY THE COMPANY

26.     The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts described in the Statement of Facts. Any such contradictory statement shall, subject to cure rights of the Company described below, constitute a breach of this Agreement, and the Company thereafter shall be subject to prosecution as set forth in Paragraphs 20 through 23 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to the Company for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Office. If the Office determines that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the Office shall so notify the Company, and the Company may avoid a breach of this Agreement by publicly repudiating such statement(s) within five business days after notification. The Company shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Statement of Facts. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Company in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Company.

27.     The Company agrees that if it, its parent company, or any of its direct or indirect subsidiaries, issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult with the Office to determine: (a) whether the text of

the release or proposed statements at the press conference are true and accurate with respect to matters between the Office and the Company; and (b) whether the Office has any objection to the release.

28.     The Office agrees, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Company's cooperation and remediation. By agreeing to provide this information to such authorities, the Office is not agreeing to advocate on behalf of the Company, but rather is agreeing to provide facts to be evaluated independently by such authorities.

**LIMITATIONS ON BINDING EFFECT OF AGREEMENT**

29.     This Agreement is binding on the Company and the Office but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local, or foreign law enforcement or regulatory agencies, or any other authorities, although the Office will bring the cooperation of the Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company.

**NOTICE**

30.     Any notice to the Office under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, with copies by electronic mail, addressed to:

Chief, Health Care Fraud Unit
United States Attorney's Office for the District of Massachusetts
John Joseph Moakley United States Federal Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210

31.    Any notice to the Company under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, with copies by electronic mail, addressed to:

General Counsel
Veloxis Pharmaceuticals, Inc.
2000 Regency Parkway, Suite 500
Cary, NC 27518

and

D. Jacques Smith and Michelle J. Shapiro
c/o ArentFox Schiff LLP
800 Boylston Street
Boston, MA 02199

32.    Notice shall be effective upon actual receipt by the Office or the Company.

//

//

//

//

//

//

//

//

//

//

//

//

//

## COMPLETE AGREEMENT

33.    This Agreement, including its attachments, sets forth all the terms of the agreement between the Company and the Office. No amendments, modifications, or additions to this Agreement shall be valid unless they are in writing and signed by the Office, the attorneys for the Company, and a duly authorized representative of the Company.

AGREED:

FOR VELOXIS PHARMACEUTICALS, INC.

Date: 5 AUG 2026                    By: _____
                                         Stacy G. Wheeler
                                         Chief Executive Officer
                                                        naceuticals, Inc.

Date: 6 Aug. 2026                   By: _____
                                         D. Jacques Smith
                                         Michelle J. Shapiro
                                         ArentFox Schiff LLP
                                         Counsel for Veloxis Pharmaceuticals, Inc.

FOR THE U.S. ATTORNEY'S OFFICE, DISTRICT OF MASSACHUSETTS

                                         LEAH B. FOLEY
                                         United States Attorney

Date: August 4, 2026                By: _____
                                         MACKENZIE A. QUEENIN
                                         Chief, Health Care Fraud Unit

                                         _____
                                         LESLIE A. WRIGHT
                                         Deputy Chief, Health Care Fraud Unit
                                         CHRISTOPHER LOONEY
                                         Assistant U.S. Attorney

19

## COMPANY OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with outside counsel for Veloxis Pharmaceuticals, Inc. (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Company. I have advised and caused outside counsel for the Company to advise the Board of Directors fully of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the Chief Executive Officer and that I have been duly authorized by the Company to execute this Agreement on behalf of the Company.

Date: 5 AUG 2026

By: _____
Stacy G. Wheeler
Chief Executive Officer
Veloxis Pharmaceuticals, Inc.

**CERTIFICATE OF COUNSEL FOR VELOXIS PHARMACEUTICALS, INC.**

I am counsel for Veloxis Pharmaceuticals, Inc. (the "Company") in the matter covered by this Agreement. In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with the Company Board of Directors. Based on our review of the foregoing materials and discussions, it is my opinion that the representative of the Company signing this Agreement has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company. Further, I have carefully reviewed the terms of this Agreement with the Board of Directors and the Chief Executive Officer, Stacy G. Wheeler. I have fully advised them of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement. To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: 6 Aug. 2026            By: _____

D. Jacques Smith
Michelle J. Shapiro
ArentFox Schiff LLP
Counsel for Veloxis Pharmaceuticals, Inc.